Connie L. Michaels, Bar No. 128065
cmichaels@littler.com
LITTLER MENDELSON P.C.
2049 Century Park East, 5th Floor
Los Angeles, California  90067.3107
Telephone:   310.553.0308
Fax No.:      310.553.5583

*(Additional defense counsel are listed on a subsequent page)*

Attorneys for Defendants
ALBERTO CARVALHO, ILEANA DAVOLOS, GEORGE MCKENNA, MONICA GARCIA, SCOTT SCHMERELSON, NICK MELVOIN, JACKIE GOLDBERG, KELLY GONEZ and TANYA ORTIZ FRANKLIN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEALTH FREEDOM DEFENSE FUND, INC., a Wyoming Not-for-Profit Corporation; CALIFORNIA EDUCATORS FOR MEDICAL FREEDOM, an unincorporated association, MIGUEL SOTELO; MARIEL HOWSEPIAN RODRIGUEZ; JEFFREY FUENTES; SANDRA GARCIA; and HOVHANNES SAPONGHIAN; NORMA BRAMBILA;<br><br>Plaintiffs,<br><br>v.<br><br>ALBERT CARVALHO, in his official capacity as Superintendent of the Los Angeles Unified School District; ILEANA DAVALOS, in her official capacity as Chief Human Resources Officer for the Los Angeles Unified School District; GEORGE MCKENNA, MONICA GARCIA, SCOTT SCHMERELSON, NICK MELVOIN, JACKIE GOLDBERG, KELLY GONEZ, and TANYA ORTIZ FRANKLIN, in their official capacities as members of the Los Angeles Unified School District governing board.<br><br>Defendants. | Case No. 2:21-cv-08688 DSF-PVCx<br><br>Hon. Dale S. Fischer<br><br>**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Date:  September 12, 2022<br>Time:  1:30 p.m.<br>Courtroom: 7D<br><br>Complaint Filed: November 3, 2021<br>SAC Filed: March 14, 2022<br>Trial Date:  March 14, 2023 |

JOY C. ROSENQUIST, Bar No. 214926
jrosenquist@littler.com
NICHOLAS W. McKINNEY, Bar No. 322792
nmckinney@littler.com
LITTLER MENDELSON P.C.
500 Capitol Mall, Suite 2000
Sacramento, California 95814
Telephone: 916.830.7200
Fax No.: 916.561.0828

CARRIE A. STRINGHAM, Bar No. 272731
cstringham@littler.com
LITTLER MENDELSON P.C.
501 W. Broadway, Suite 900
San Diego, CA 92101-3577
Telephone: 619.515.1836
Fax.: 619.232.4302

Additional Attorneys for Defendants

## *TABLE OF CONTENTS*

**Page**

I. INTRODUCTION AND SUMMARY OF ARGUMENT .................................. 7

II. LEGAL ARGUMENT ................................................................................... 8

    A. As The Mandate Does Not Implicate A Fundamental Right Or Suspect Classification, It Must Be Examined Under Rational Basis Review ................................................................................................. 8

        1. Plaintiffs' Substantive Due Process Claim Fails Because the Mandate Easily Survives Rational Basis Review ......................... 11

        2. Plaintiff's Equal Protection Claim Fails Because the Mandate Easily Survives Rational Basis Review ......................... 14

    B. The Mandate Survives Strict Scrutiny Review ...................................... 15

    C. Plaintiffs' 3rd - 7th Claims Must Be Dismissed With Prejudice ............. 15

III. CONCLUSION ........................................................................................... 16

LITTLER MENDELSON, P.C.
501 W. Broadway, Suite 900
San Diego, CA 92101.3577
619.232.0441

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Balt. Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*
    462 U.S. 87 (1983)..................................................................................................11

*City of Cleburne v. Cleburne Living Center, Inc*,
    473 U.S. 432 ..........................................................................................................13

*Doe #1-#14 v. Austin*,
    572 F.Supp.3d 1224 (N.D. Fla. 2021) ................................................8, 11, 12, 13

*Does 1-6 v. Mills*,
    16 F.4th 20 (1st Cir. 2021) ....................................................................................14

*Does v. Mills*,
    566 F. Supp. 3d 34 (D. Me. 2021) ..........................................................................9

*FCC v. Beach Commc'ns, Inc.*,
    508 U.S. 307 (1993)...............................................................................................10

*Halgren v. City of Naperville*,
    577 F.Supp.3d 700 (N.D. Ill. 2021)...............................................................*passim*

*Harris v. Univ.of Mass., Lowell*,
    557 F. Supp. 3d 304 (D. Mass. 2021)......................................................................8

*Heller v. Doe*,
    509 U.S. 312 (1993)..........................................................................................10, 13

*Jacobson v. Mass.*,
    197 U.S. 11 (1905).......................................................................................8, 9, 13

*Johnson v. Brown*,
    567 F. Supp. 3d 1230 (D. Or. 2021)..........................................................8, 9, 12

*Kheriaty v. Regents of the Univ. of Cal.*,
    WL 4714664 (C.D. Cal. 2021) . .......................................................................9, 10

*Knickmeyer v. Nev. ex rel Eighth Judicial Dist. Ct.*,
    173 F.Supp.3d 1034 (D. Nev. 2016) .....................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Norris v. Stanley*,
  567 F. Supp. 3d 818 (W.D. Mich. 2021) ................................................... 8, 9, 10

*Reed v. Town of Gilbert, Ariz.*
  576 U.S. 155 ........................................................................................................ 14

*Rodriguez-Velez v. Pierluisi-Urrutia*,
  WL 5072017, at *6 (D.P.R. Nov. 1, 2021) ............................................... 9, 11

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
  141 S. Ct. 63 (2020) ........................................................................................ 14

*Roman v. Evans*,
  517 U.S. 620 (1996) ........................................................................................ 11

*Valdez v. Grisham*,
  559 F.Supp.3d 1161 (D.N.M 2021) ...................................................... 8, 9, 11

*Washington v. Glucksberg*,
  521 U.S. 702 (1997) ........................................................................................ 10

*Williams v. Brown*,
  567 F.Supp.3d 1213 (D. Or. 2021) .......................................................... 8, 10

*Williams v. Pryor*,
  240 F.3d 944 (11th Cir. 2001) ...................................................................... 14

**Other Authorities**

Central District Local Rule 7-12 .................................................................... 15

https://covid19.who.int/region/amro/country/us (In the United States, as
  of August 2022, there have been 92,739,935 confirmed cases with
  1,031,832 deaths, and 599,453,415 vaccines doses administered) ...... 6

https://covid19who.int ........................................................................................ 6

https://publichealth.lacounty.gov/media/coronavirus/data/# ................... 6

https://www.cdc.gov/coronavirus/2019-ncov/vaccines/safety/safety-of-vaccines.html?s_cid=10507:covid%20vaccine%20safety:sem.ga:p:RG:GM:gen:PTN:FY21 ..................................................................................6

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Facing an unprecedented and deadly COVID-19 pandemic, Los Angeles Unified School District ("LAUSD") has worked diligently to protect the health and safety of its vulnerable community whilst continuing to pursue its mission of providing educational needs to its students. Against this backdrop, Plaintiffs seek to have this Court approve a notion that an employer's vaccine mandate, issued during a global pandemic, violates either the liberty interests secured by the due process clause of the 14th Amendment, or the equal protection guarantees. However, the law has historically recognized limits to an individual's right to determine what to do with his or her own body when faced with society's interest in protecting public health and safety. At no time in modern history has such interests been more compelling than over the last two-and-a half years.

Since the beginning of 2020, COVID-19 has been regarded as a highly transmissible disease that can cause serious illness and death.[1] On 8/26/22 alone, there were 3,694 new COVID-19 reported cases in Los Angeles County, 3,386,161 cases reported over the course of the pandemic, and over 33,000 reported deaths.[2] The overwhelming consensus amongst the nation's leading health experts is that COVID-19 vaccines are safe and effective in preventing serious illness and death from this highly contagious virus.[3]

With these statistics in mind, and the nationwide push to get students back in the classroom and teachers back to work, LAUSD determined employee vaccination requirements were necessary to meet its constitutionally mandated obligations to protect

---

[1] *See* https://covid19who.int (WHO Coronavirus Dashboard) (as of August 26, 2022, there have been 596,873,121 confirmed cases of COVID-19 globally, including 6,459,684 deaths, and 12,449,443,718 vaccines does administered. Webpage attached as Ex. A to Request for Judicial Notice ("RFN"), filed concurrently herewith. *See also* https://covid19.who.int/region/amro/country/us (In the United States, as of August 2022, there have been 92,739,935 confirmed cases with 1,031,832 deaths, and 599,453,415 vaccines doses administered). *See* Ex. A RFN.
[2] https://publichealth.lacounty.gov/media/coronavirus/data/#. *See* Ex. B to RFN.
[3] https://www.cdc.gov/coronavirus/2019-ncov/vaccines/safety/safety-of-vaccines.html?s_cid=10507:covid%20vaccine%20safety:sem.ga:p:RG:GM:gen:PTN:FY21. Updated August 22, 2022. *See* Ex. C to RFN.

students and staff. Consistent with the recommendations of the U.S. Centers for Disease Control and Prevention ("CDC") that all persons over the age of 6 months be vaccinated (even those previously infected with the virus),[4] and following consultation with experts in the field, the LAUSD mandated vaccinations for its employees ("Mandate") with exemptions for health and religious reasons.

Stopping the spread of COVID-19 amongst some of the most vulnerable segments of the population within LAUSD public schools is a legitimate government interest. The Mandate is rationally related to that interest as requiring vaccines for all LAUSD employees has and remains to be the gold standard for ensuring that schools and classrooms are not shut down. Vaccinations lower the risk of outbreaks and serious illness, thereby allowing children to continue to receive in person instruction while simultaneously protecting the health of vulnerable children and staff and those close to them.

Plaintiffs incorrectly argue that the Mandate should be strictly scrutinized, arguing that it violates their fundamental rights to refuse government coerced medical treatment and that the Mandate treats individuals differently based on vaccination status. Plaintiffs are incorrect. The *overwhelming consensus* amongst both federal and state courts has been to reject these identical arguments and hold that vaccine mandates are *not* entitled to a heightened standard of review. Consistent with this growing precedent, Plaintiffs' arguments in Opposition to the Motion are unavailing.

## II.   LEGAL ARGUMENT

### A.   As The Mandate Does Not Implicate A Fundamental Right Or Suspect Classification, It Must Be Examined Under Rational Basis Review

Plaintiffs argue the Mandate violates their right to refuse unwanted medical treatment. *See* Dkt. No. 79, at 17:13-15. According to Plaintiffs, this right falls within a select handful of *fundamental* rights under the 14th Amendment, relying on a line of

---

[4] *See Id.* (Ex. C to RFN).

inapposite decisions. Critically, Plaintiffs fail to identify even a *single* case holding that COVID-19 vaccine requirements implicate a fundamental right or applying strict scrutiny to a vaccine mandate.

Although Plaintiffs endeavor to downplay and distinguish *Jacobson v. Mass.*, 197 U.S. 11 (1905),[5] they concede that it is still *binding* precedent. *See* Dkt. No 79, 9:17-20. They fail to acknowledge, however, that federal courts across the country have consistently relied on *Jacobson* in concluding that *there is no fundamental right to refuse a COVID-19 vaccination*.

For instance, in rejecting a group of health care workers' request to enjoin the state from enforcing a vaccination mandate, one federal court noted: "[I]n the context of COVID-19, courts across the county have concluded that *Jacobson* established there is no fundamental right to refuse vaccination." *Williams v. Brown*, 567 F.Supp.3d 1213, 1226 (D. Or. 2021) (citing *Klaassen v. Tr. of Ind. Univ.*, 7 F.4th 592, 593 (7th Cir. 2021) which held, "[G]iven *Jacobson v. Massachusetts*,…there can't be a constitutional problem with vaccination against SARS-CoV-2."). Relying on *Jacobson*, numerous other federal courts across the country have consistently reached the same conclusion.[6]

---

[5] Plaintiffs premise their case on the unfounded theory that the COVID-19 vaccines are actually "treatments" as opposed to vaccines because they do not provide complete immunity from the virus. Not only is this argument contrary to the CDC's definition of vaccines (as Plaintiffs' highlight in the Opposition to somehow undermine the CDC) but is not supported by any admissible evidence. This argument also ignores the fact that no vaccine provides complete immunity (i.e., the flu vaccine) yet are still considered vaccines as opposed to treatments. In assessing a similar argument, i.e., that the COVID-19 vaccine does not reduce transmission, the Court in *Halgren v. City of Naperville* correctly noted that, even if the evidence does not establish that COVID-19 vaccines do not reduce the degree of viral transmission, "the question of whether they *might reduce the rate* of transmission still constitutes an issue falling within the bounds of rational speculation…[T]hat is all that the rational basis test requires." 577 F.Supp.3d 700, 743 (N.D. Ill. 2021).

[6] *See also Norris v. Stanley,* 567 F. Supp. 3d 818, 821 (W.D. Mich. 2021) ("there is *no fundamental right to decline a vaccination*."); *Johnson v. Brown*, 567 F. Supp. 3d 1230, 1250 (D. Or. 2021) ("*the right to refuse vaccination is not deeply rooted in this nation's history*. In fact, the opposite is true."); *Valdez v. Grisham*, 559 F.Supp.3d 1161, 1173 (D.N.M 2021)("federal courts have consistently held that [COVID-19] vaccine mandates *do not implicate a fundamental right*…"); *Harris v. Univ.of Mass., Lowell,* 557 F. Supp. 3d 304, 312 (D. Mass. 2021) (concluding students lacked a fundamental right because "the Supreme Court has settled that it is within the police power of a state to provide for compulsory vaccination."); *Doe #1-#14 v. Austin*, 572 F.Supp.3d 1224,

As the court in *Halgren v. City of Naperville*, aptly concluded: "[W]hile the Court agrees that Plaintiffs clearly possess a *significant* liberty interest in refusing coercive medical treatment…they fail to identify a *fundamental* liberty interest to warrant strict scrutiny under prevailing case law." 577 F.Supp.3d 700, 728 (N.D. Ill. 2021) (emphasis added).

Based on the absence of a fundamental right to refuse vaccination, these same courts have consistently held that challenges to vaccination mandates are properly scrutinized under rational basis review.[7] As summarized by the *Johnson* court:

> "[I]n sum, under *Jacobson* followed by over a century's worth of rulings with the consistent use of rational basis review to assess mandatory vaccination measure, rational basis review applies to Plaintiffs' claims in this case."

567 F.Supp.3d at 1287 (internal quotation marks and citations omitted).

Notably, in a case much like this one, the Central District of California rejected a substantive due process claim where a plaintiff sought relief from his employer's vaccination requirement. *Kheriaty v. Regents of the Univ. of Cal.*, WL 4714664 (C.D. Cal. 2021). Relying on *Jacobson* and the authorities discussed above, and distinguishing the same authorities Plaintiffs rely on here, the court confirmed that there is no

---

1239 (N.D. Fla. 2021) (finding *no fundamental right at stake* in challenge to the military's vaccine mandate and, citing *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) ("[B]ecause substantive due process involves enumerated rights, courts must be "reluctant to expand the concept."); *Rodriguez-Velez v. Pierluisi-Urrutia*, WL 5072017, at *6 (D.P.R. Nov. 1, 2021) (holding "the mandate does not involve a plain, palpable invasion of rights secured by the constitution" and applying rational basis review to the plaintiffs' substantive due process claims.)

[7] *See, e.g., Kheriaty*, WL 4714664, at *6 ("*Jacobson* 'essentially applied rational basis review.'" quoting *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 70 (2020) (Gorsuch, J. concurring)); *Norris*, 567 F. Supp. 3d at 821 ("Because this Court finds no fundamental right is implicated in the present matter, the Court must apply a rational basis standard."); *Does v. Mills*, 566 F. Supp. 3d 34 (D. Me. 2021) (applying rational basis review to constitutional challenge to COVID-19 vaccine requirements for healthcare workers.); *Valdez*, 559 F. Supp.3d at 1173 ("federal courts have consistently held that vaccine mandates do not implicate a fundamental right and that rational basis review therefore applies in determining the constitutionality of such mandates.").

fundamental right to refuse vaccination. Specifically, in distinguishing a constitutionally protected liberty interest from a *fundamental right,* the court concluded, the vaccination requirement at issue "clearly implicates different liberty interest from *Cruzan.*" *Kheriaty*, at *5. The same is true here.

In specifically addressing the impact of *Cruzan, Glucksberg* and *Harper* (the three cases relied on by Plaintiffs), the court in *Halgren,* stressed, "controlling precedent *requires* that this Court discount the impact of *Cruzan*, *Glucksberg* and *Harper*, and apply rational basis review to Plaintiff's constitutional challenges." 577 F.Supp.3d at 733 (emphasis added). Although these cases support a protected liberty interest in refusing government coerced medical treatment, these cases "do not establish that Plaintiff's due process interests…trigger "fundamental" classification (and thus strict scrutiny) under the law." *Id*.

As with substantive due process, courts have routinely rejected the argument that vaccine mandates will trigger heightened scrutiny under the Equal Protection Clause and have instead applied rational basis review. *Williams*, 567 F.Supp.3d at 1227 citing *Kheriaty,* WL 4714664, at *7 (rejecting heightened scrutiny based on classification of "individuals who have vaccine-induced immunity and individuals who have infection-induced immunity,"); *see also Norris*, 567 F. Supp. 3d at 820-823 (finding no suspect classification or fundamental right implicated by a generally applicable vaccine mandate).

Pursuant to this extensive authority blatantly overlooked in the Opposition, no fundamental right or suspect classification is implicated by the Mandate; therefore, rational basis is the appropriate constitutional standard of review.

### 1. Plaintiffs' Substantive Due Process Claim Fails Because the Mandate Easily Survives Rational Basis Review

Rational-basis review is a "highly deferential" review under which plaintiffs have the burden of "negat[ing] every conceivable basis that might support [the Mandate],

even if that basis has no foundation in the record." *Heller v. Doe*, 509 U.S. 312, 320-21 (1993). In other words, there must be no "reasonable conceivable state of facts that would provide rational basis for the [Mandate]." *FCC v. Beach Commc'ns, Inc.,* 508 U.S. 307, 314 (1993). A "statute survives rational basis review even if it seems unwise or if the rationale for it seems tenuous." *Roman v. Evans,* 517 U.S. 620, 632 (1996).

Plaintiffs fail to meet their extraordinary burden of showing the Mandate lacks any rationality. First, Plaintiffs do not dispute that the COVID-19 pandemic remains an important public health crisis. *See* Dkt. No. 65, at 9:21-22:14. Second, Plaintiffs acknowledge that the vaccines can mitigate the more dangerous symptoms of COVID-19. *See* Dkt. No. 65, at 15:3-14. Third, Plaintiffs' attacks on the vaccines' safety and efficacy are not only premised on unfounded theories and *inadmissible* "evidence," but are directly at odds with the leading governmental authorities' position on vaccines.[8] (*e.g.*, the CDC recommends that everyone over 6 months of age be vaccinated). Nor do Plaintiffs genuinely refute that "extensive data supports vaccination as an effective strategy for preventing severe illness, hospitalization, and death from COVID-19." *Rodriguez-Velez,* WL 5072017, at *7 (internal citations omitted). Finally, even though all LAUSD employees are subject to mandatory vaccination, they may still obtain a religious or medical exemption, a fact also acknowledged by Plaintiffs. *See* Dkt. No. 65, at 20:7-21:26.

Although Defendants *bear no evidentiary burden* to justify the Mandate,[9] there can be no doubt that the Mandate is rationally related to a legitimate government

---

[8] Plaintiffs do not dispute, with any credible or admissible evidence, the fact that the COVID-19 vaccines meet the FDA's "rigorous scientific standards for safety, effectiveness, and manufacturing quality needed to support approval or authorization of the vaccine."[8] *See Rodriguez-Velez,* WL 5072017 at *7. Nor do Plaintiffs genuinely refute that, "[E]xtensive data supports vaccination as an effective strategy for preventing severe illness, hospitalization, and death from COVID-19." *Id.* (internal citations omitted). The FDA is entitled to substantial deference because drug licensing decisions involve "scientific determination(s) within the FDA's "area of expertise." *Balt. Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.* 462 U.S. 87, 103 (1983).

[9] *See Doe #1-#14,* 572 F.Supp.3d at 1240 (defendants can base their mandate "on rational speculation unsupported by evidence or empirical data." (citing *Beach Commc'ns,* 508 U.S. at 315).

interest, namely, reducing the spread of COVID-19 in Los Angeles County public schools to protect children and staff. The Mandate is rationally related to that interest as requiring vaccines for all LAUSD employees will and has lowered the risks of outbreaks at school sites, decreased the severity of the symptoms of those infected and minimized employee absenteeism, thereby allowing children to continue to learn in person. *See, e.g. Johnson,* 567 F.Supp.3d at 1252 (holding vaccine requirements "are rationally related to Defendants' interests in slowing the spread of COVID-19, protecting Oregon's citizens, protecting children and teachers in schools, and preserving healthcare resources and protecting patients.").

Plaintiffs challenge the vaccines' ability to decrease the spread of COVID-19, a claim that is simply unsupported by any admissible scientific or medical evidence and is a regurgitation of oft-repeated anti-vax rhetoric.[10] At most, Plaintiffs' arguments against the efficacy and safety of the COVID-19 vaccines (including the argument that the COVID-19 vaccines are actually treatments, and not vaccines), as well as their challenge to the logic or scientific basis for the Mandate, shows that some experts may disagree. This does not, however, create a basis to invalidate the Mandate on constitutional grounds. *See, e.g., Does #1-#14,* 572 F.Supp.3d at 1236, citing *Marsh v. Or. Nat. Res. Council,* 409 U.S. 360, 378 ("When specialists express conflicting views, an agency must have discretion to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive."). Ultimately, Plaintiffs' disjointed arguments are insufficient to overcome

---

[10] Plaintiffs arguments also ignore critical other factors supporting the adoption of the Mandate such as: waning immunity experienced by both those with natural immunity and the vaccinated; the potential additional protection afforded to those with both natural immunity and who are vaccinated; that the amount of viral load can affect transmissibility with vaccines known to lower that load in the infected; or the fact that the so-called "peer reviewed" treatments identified in the Opposition, unlike the vaccines, would have low to no impact on transmissibility (amongst a number of other factors too numerous to list herein). As to potential hybrid immunity, the *Halgren* court noted, "Plaintiffs fail to show that the benefits of vaccination on top of natural immunity (and thus combining both forms of protection via hybrid immunity) exceeds the bounds of rational speculation as a "conceivable basis" for the mandates under the rational review test." 577 F.Supp.3d at 745.

LITTLER MENDELSON, P.C.
501 W. Broadway, Suite 900
San Diego, CA 92101.3577
619.232.0441

rational basis review and judgment should be entered in Defendants' favor as to the first cause of action.

### 2. Plaintiff's Equal Protection Claim Fails Because the Mandate Easily Survives Rational Basis Review

"A statutory classification fails rational-basis review only when it `rests on grounds wholly irrelevant to the achievement of the State's objective.'" *Heller*, 509 U.S. at 324 (quoting *Holt Civic Club v. City of Tuscaloosa*, 439 U.S. 60, 71, 99 (1978).) "In the absence of deprivation of a fundamental right or the existence of a suspect class, the proper standard of review is the rational basis test." *Halgren,* 577 F.Supp.3d at 752 (internal quotations and citations omitted). Thus, if there is no suspect class or fundamental right at issue, differential treatment is presumed to be valid, so long as it is "rationally related to a legitimate state interest." *City of Cleburne v. Cleburne Living Center, Inc*, 473 U.S. 432, 439–440. Based on this authority, the Mandate need only survive rational basis review.

Under the rational basis test, Plaintiffs fail to show that the Mandate violates equal protection. First, as described above, Plaintiffs cannot show that the rights implicated by the Mandate constitute "fundamental rights" under the Constitution, as courts have *uniformly rejected* the argument that vaccination requirements imposed to protect public health require a heightened level of review. Second, even assuming the Mandate treats groups differently based on their vaccination status, Plaintiffs identify no legal support for the notion that vaccination status, alone, is a traditional suspect (or quasi-suspect) class within the meaning of the Equal Protection Clause. *See, e.g., Halgren,* 577 F.Supp.3d at 753. Plaintiffs must show more than an unconstitutional application as to some (*e.g.*, those with natural immunity), they "must demonstrate that no possible application" of the Mandate is constitutional. *See Doe v. Austin*, 572 F.Supp.3d at 1240.

Plaintiffs offer no credible evidence demonstrating that *no possible application of the Mandate is constitutional*. To the contrary, as the extensive authority cited herein

establishes, the Mandate survives constitutional muster and, in fact, is far less broad than the mandate in *Jacobson*, in that it affects only those employees of the LAUSD (not the general public). Importantly, policies survive this standard even when they are "significantly over-inclusive or under-inclusive," so long as they bear some rational connection to the policy's goal. *Williams v. Pryor*, 240 F.3d 944, 948 (11th Cir. 2001) (quoting *Beach Commc'ns*, 508 U.S. at 314.) As a result, the Mandate easily survives rational basis review and judgment in favor of Defendants should be entered as to Plaintiffs' second cause of action.

### B. The Mandate Survives Strict Scrutiny Review

Even if this Court rejects the prevailing precedent and finds strict scrutiny is the required standard of review, the Mandate still withstands Plaintiffs' constitutional challenges. A challenged government action subject to strict scrutiny may be upheld if it is justified by a compelling interest and is narrowly tailored to advance that interest. *Reed v. Town of Gilbert, Ariz.* 576 U.S. 155, 171. "[F]ew interests are more compelling than protecting public health and the health against a deadly virus." *Does 1-6 v. Mills*, 16 F.4th 20, 32 (1st Cir. 2021). Curbing the spread of COVID-19 is "unquestionably a compelling interest." *Roman Catholic Diocese of Brooklyn,* 141 S.Ct. 63, 67. The Mandate is narrowly tailored to advance that interest in that it conforms to prevailing public health recommendations and affects only employees of the LAUSD while allowing for exemptions. Narrowly tailored and as a tool to curb the spread of the virus, the Mandate bears a real and substantial relation to the public health objectives of LAUSD. As a result, even under a strict scrutiny analysis the Mandate nonetheless survives Plaintiffs' constitutional challenges.

### C. Plaintiffs' 3rd - 7th Claims Must Be Dismissed With Prejudice

Rather than addressing the substantive arguments raised in Defendants' Motion,

which address the obvious legal and factual deficiencies of Plaintiffs' 3rd through 7th claims, Plaintiffs represent that they "have agreed to dismissal, *without prejudice*, of those claims." *See* Dkt. 79, 9:3-6. In fact, as of the drafting of this Reply, *Plaintiffs have yet to take any action to dismiss these baseless claims*. Further, as Plaintiffs failed to substantively oppose the Motion, which seeks dismissal of the 3rd through 7th causes of action *with* prejudice, Plaintiffs must be deemed to have consented to the granting of the relief sought. *See* Local Rule 7-12; *see, e.g., Knickmeyer v. Nev. ex rel Eighth Judicial Dist. Ct.*, 173 F.Supp.3d 1034 (D. Nev. 2016).

### III. CONCLUSION

Based on the foregoing, Defendants respectfully request this Court dismiss each of Plaintiffs' seven causes of action with prejudice.

Dated: August 29, 2022

LITTLER MENDELSON P.C.

*s/Connie L. Michaels*
Connie L. Michaels
Carrie A. Stringham