**FOR PUBLICATION**

## UNITED STATES COURT OF APPEALS
### FOR THE NINTH CIRCUIT

| | |
|---|---|
| HEALTH FREEDOM DEFENSE FUND, INC., a Wyoming Not-for-Profit Corporation; JEFFREY FUENTES; SANDRA GARCIA; HOVHANNES SAPONGHIAN; NORMA BRAMBILA; CALIFORNIA EDUCATORS FOR MEDICAL FREEDOM, *Plaintiffs-Appellants*, <br><br>  v. <br><br> ALBERTO CARVALHO, in his official capacity as Superintendent of the Los Angeles United School District; ILEANA DAVALOS, in her official capacity as Chief Human Resources Officer for the Los Angeles School District; GEORGE MCKENNA; MONICA GARCIA; SCOTT SCHMERELSON; NICK MELVOIN; JACKIE GOLDBERG; KELLY GONEZ; TANYA ORTIZ FRANKLIN, in their official capacities as members of the Los Angeles Unified School District governing board, *Defendants-Appellees*. | No. 22-55908 <br><br> D.C. No. 2:21-cv-08688-DSF-PVC <br><br><br> OPINION |

Appeal from the United States District Court
for the Central District of California
Dale S. Fischer, District Judge, Presiding

Argued and Submitted September 14, 2023
Seattle, Washington

Filed June 7, 2024

Before:  Michael Daly Hawkins, Ryan D. Nelson, and
Daniel P. Collins, Circuit Judges.

Opinion by Judge R. Nelson;
Concurrence by Judge R. Nelson;
Concurrence by Judge Collins;
Dissent by Judge Hawkins

## SUMMARY[*]

### COVID-19/Mootness

The panel vacated the district court's order dismissing plaintiffs' action alleging that the COVID-19 vaccination policy of the Los Angeles Unified School District ("LAUSD")—which, until twelve days after oral argument, required employees to get the COVID-19 vaccination or lose their jobs—interfered with their fundamental right to refuse medical treatment.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the voluntary cessation exception to mootness applied. LAUSD's pattern of withdrawing and then reinstating its vaccination policies was enough to keep this case alive. The record supported a strong inference that LAUSD waited to see how the oral argument in this court proceeded before determining whether to maintain the Policy or to go forward with a pre-prepared repeal option. LAUSD expressly reserved the option to again consider imposing a vaccine mandate. Accordingly, LAUSD has not carried its heavy burden to show that there is no reasonable possibility that it will again revert to imposing a similar policy.

Addressing the merits, the panel held that the district court misapplied the Supreme Court's decision in *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), in concluding that the Policy survived rational basis review. *Jacobson* held that mandatory vaccinations were rationally related to preventing the spread of smallpox. Here, however, plaintiffs allege that the vaccine does not effectively prevent spread but only mitigates symptoms for the recipient and therefore is akin to a medical treatment, not a "traditional" vaccine. Taking plaintiffs' allegations as true at this stage of litigation, plaintiffs plausibly alleged that the COVID-19 vaccine does not effectively "prevent the spread" of COVID-19. Thus, *Jacobson* does not apply.

Concurring, Judge R. Nelson wrote separately to point out that this Circuit's intervening case *Kohn v. State Bar of California*, 87 F.4th 1021 (9th Cir. 2023) (en banc), raises the question of whether the district court's holding that the Los Angeles Unified School District is entitled to sovereign immunity should be revisited on remand.

Concurring, Judge Collins wrote separately to address a crucial point that the district court overlooked. Pursuant to more recent Supreme Court authority, compulsory treatment for the health benefit of the person treated—as opposed to compulsory treatment for the health benefit of others—implicates the fundamental right to refuse medical treatment. Plaintiffs' allegations here are sufficient to invoke that fundamental right. Defendants note that the vaccination mandate was imposed merely as a "condition of employment," but that does not suffice to justify the district court's application of rational-basis scrutiny.

Dissenting, Judge Hawkins wrote that because there is no longer any policy for this court to enjoin, he would, as this court has done consistently in actions challenging rescinded early pandemic policies, hold that this action is moot, vacate the district court's decision, and remand with instructions to dismiss the action without prejudice.

---

## COUNSEL

John W. Howard (argued) and Scott J. Street, JW Howard Attorneys LTD., San Diego, California; George R. Wentz, Jr., The Davillier Law Group LLC, New Orleans, Louisiana; for Plaintiffs-Appellants.

Connie L. Michaels (argued), Littler Mendelson PC, Los Angeles, California; Carrie A. Stringham, Littler Mendelson PC, San Diego, California; for Defendants-Appellees.

**OPINION**

R. NELSON, Circuit Judge:

For over two years—until twelve days after argument—
Los Angeles Unified School District (LAUSD) required
employees to get the COVID-19 vaccination or lose their
jobs. LAUSD has not carried its "formidable burden" to
show that it did not abandon this policy because of litigation,
and thus that "no reasonable expectation remains that it will
return to its old ways." *Cf. FBI v. Fikre*, 601 U.S. 234, 241
(2024) (cleaned up). So this case is not moot. *See id.* On
the merits, the district court misapplied the Supreme Court's
decision in *Jacobson v. Massachusetts*, 197 U.S. 11 (1905),
stretching it beyond its public health rationale. We vacate
the district court's order dismissing this claim and remand
for further proceedings under the correct legal standard.

I

This case is about LAUSD's COVID-19 vaccination
policy. LAUSD has reversed course several times. Because
of its importance to the mootness issue, we recount that
history in detail.[1]

LAUSD issued its first policy on March 4, 2021. That
policy was challenged two weeks later in a lawsuit filed by
Plaintiff California Educators for Medical Freedom (CEMF)
and several individual plaintiffs. According to CEMF's
complaint, LAUSD's policy required employees to get the

---

[1] We may properly take judicial notice that various statements were made
in filings in related litigation. *See United States ex rel. Robinson
Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir.
1992). But we do not take those statements themselves as true. *See
Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

COVID-19 vaccine, no exceptions.   The March 4 memorandum announcing this policy was attached to the complaint.  This memorandum stated that employees would "be notified to make an appointment through the District's vaccination program when it is their turn to get vaccinated." *See CEMF v. LAUSD*, No. 21-cv-02388, 2021 WL 1034618, Dkt. 1, Ex. F at 1 (C.D. Cal. Mar. 17, 2021).  It added that "District employees may either participate in the District's COVID-19 vaccination program or provide vaccination documentation in the form of an official Vaccination Record certified by a medical professional."  *Id.*  For those who chose the latter option, the memorandum provided instructions on how to "submit proof of vaccination from an external medical provider through the LAUSD Daily Pass" website.  *Id.*  It specified that "[c]urrent District employees will submit documentation of COVID-19 vaccination through the Daily Pass web portal at http://DailyPass.lausd.net as indicated in their vaccination notification."  *Id.* at 2.  The memorandum said nothing about an option to submit to COVID testing rather than submitting vaccine verification.

The very next day after CEMF filed suit, LAUSD reversed course and issued a "clarifying memorandum" that gave employees an option to test for COVID-19 if they did not want to get the vaccine.  Relying on this clarifying memorandum, which LAUSD claimed did not impose "mandatory vaccinations," LAUSD moved to dismiss CEMF's suit because, among other things, it was "moot and/or premature."  LAUSD disputed whether CEMF had adequately pleaded that exemptions would not be allowed.

But LAUSD did not dispute CEMF's contention that the March 4 memorandum was properly construed "as requiring District employees to be vaccinated."   Instead, LAUSD

argued that, considering the March 18 "clarifying memorandum" allowing a testing alternative—issued after the lawsuit was filed—the case was moot or unripe. CEMF argued that the complaint properly alleged that a mandatory policy was in place when the suit was filed, and that the post-filing clarifying memorandum could not establish mootness under the voluntary cessation doctrine. CEMF's position was bolstered by its citation in the complaint to a letter from the LAUSD employees' union, which stated that "[a]ll District employees will be required to be vaccinated," and "[n]o exceptions have been made." *See CEMF*, No. 21-cv-2388, 2021 WL 1034618, Dkt. 1, Ex. G at 2. In its reply brief LAUSD shifted its position and explicitly denied that the March 4 memorandum "reflects a mandatory vaccination policy." LAUSD argued that the March 18 memorandum was "merely a clarification" of the "original March 4, 2021 memorandum."

On July 27, 2021, the district court dismissed the complaint, holding that CEMF's claims were not ripe. Noting that CEMF's amended complaint had cited the March 18 memorandum, the district court held that, considering the then-existing testing option, "there is no threat of future injury because LAUSD explicitly stated it is not requiring vaccines." The court held that it was "completely speculative" whether "LAUSD will begin to require vaccination of all employees at some point in the future and will not offer exemptions" for the plaintiffs. The court acknowledged CEMF's allegations about the March 4 policy memorandum. Still, the court held that, because that policy was changed before it was ever enforced, the dispute remained unripe. "That Defendants were contemplating requiring the vaccine, and then later reversed course and

explicitly said they would not be, does not create a ripe case or controversy."

Having obtained dismissal of CEMF's suit on these grounds, LAUSD reversed course again two weeks later. Its new policy (the Policy), adopted on August 13, 2021, expressly eliminated the testing option on which the district court's July 27 dismissal had been based. The Policy required that all LAUSD employees be fully vaccinated against COVID-19 by October 15, 2021. Like the earlier March 4 memorandum, the Policy required those who are vaccinated outside of LAUSD's own program to submit proof of vaccination through the "Daily Pass" web portal. The Policy ostensibly provided for religious and medical exemptions. But each of the individual plaintiffs here were allegedly denied accommodations, thus rendering any exemptions "illusory."

CEMF sued again, this time joined by Health Freedom Defense Fund, Inc. and new individual plaintiffs (collectively, Plaintiffs). They named as defendants LAUSD employees and Board members in their official capacities. Plaintiffs challenged the Policy as violating the Fourteenth Amendment, among other claims. Only the substantive due process and equal protection claims brought under 42 U.S.C. § 1983 are on appeal. Plaintiffs ask for future relief, including declaring the Policy unconstitutional and enjoining LAUSD from requiring it.

Plaintiffs claim that the Policy interferes with their fundamental right to refuse medical treatment. Their complaint's crux is that the COVID-19 "vaccine" is not a vaccine. "Traditional" vaccines, Plaintiffs claim, should prevent transmission or provide immunity to those who get them. But the COVID-19 vaccine does neither. At best,

Plaintiffs suggest, it mitigates symptoms for someone who has gotten it and then gets COVID-19.  But this makes it a medical *treatment*, not a vaccine.

Plaintiffs' complaint supports these assertions with data and statements from the Centers for Disease Control and Prevention (CDC).  For example, Plaintiffs claim that the CDC changed the definition of "vaccine" in September 2021, striking the word "immunity."  Thus, they argue, the CDC conceded that the COVID-19 vaccine is not a "traditional vaccine."  They also cite CDC statements that say the vaccine does not prevent transmission, and that natural immunity is superior to the vaccine.

LAUSD moved for judgment on the pleadings, requesting judicial notice of the attached CDC information. This included information about the COVID-19 death count and number of cases, as well as the vaccine's safety and effectiveness.  For example, the CDC says that "COVID-19 vaccines are **safe and effective**."

The district court granted LAUSD's motion.  *Health Freedom Def. Fund v. Reilly*, No. CV-21-8688, 2022 WL 5442479, at \*7 (C.D. Cal. 2022).  The district court took judicial notice of LAUSD's attached documents.  *Id.* at \*2–3.  Then, applying a rational basis review, the district court held that the Policy does not implicate any fundamental right, *id.* at \*5, and that LAUSD had a legitimate government purpose in requiring the COVID-19 vaccination, *id.* at \*6. The district court held that the COVID-19 vaccine's reduction in symptoms and prevention of severe disease and death in recipients survived rational basis review, even if it did not prevent transmission or contraction.  *Id.*

The district court largely relied on *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), in concluding that the

Policy survived rational basis review.  *Reilly*, 2022 WL
5442479, at \*5–6.  Plaintiffs argued that the COVID-19
vaccine is a "medical treatment" and not a traditional
vaccine.  *Id.* at \*5.  The district court disagreed, holding that
"*Jacobson* does not require that a vaccine have the specific
purpose of *preventing* disease."  *Id.* (emphasis in original).

Plaintiffs appealed the district court's order.  In April
2023, LAUSD filed its answering brief.  It vigorously
defended its vaccine mandate and did not raise any
suggestion that it might be revoked.  We held oral argument
on the morning of September 14, 2023.  The case was
calendared together with two similar appeals involving the
rejection of challenges to vaccine mandates that had been
imposed on state employees by Oregon and Washington.
But Oregon and Washington revoked their mandates before
the answering briefs were filed in those cases.  They
therefore sought dismissal of the claims for prospective
relief in those cases as moot.

LAUSD's counsel was asked at oral argument about the
contrast with those cases and whether LAUSD could
maintain the Policy indefinitely.  LAUSD's counsel
responded that the Policy was properly still in place because
"there are Covid spikes right now."  Counsel stated that
LAUSD was "very concerned about maintaining the health
of [its] staff" and believed that COVID vaccines should
continue to be required "until it is absolutely established that
the vaccines have no effect."  When again pressed about the
contrast with the two other argued cases about vaccine
mandates, counsel stated that "with respect to what the
district is going to do now, what they're considering doing
now, there is only so much I can tell you, because it's not in
the record."  Counsel then reaffirmed LAUSD's view that
"with respect to the vaccination requirement, they have felt

that until it is established that the vaccine is not of use in any way that it is important to go ahead and maintain it." LAUSD's counsel also repeatedly defended the constitutionality of its vaccine mandate.

According to a declaration submitted by Plaintiffs' counsel, LAUSD's attorney turned to him as they were leaving the courtroom and said, "What are you going to do when we rescind the mandate?" That same day, LAUSD's Superintendent (the Superintendent) submitted to the LAUSD Board (the Board) of Education a proposal to repeal the mandate.[2] Twelve days later, (the Board) voted to rescind the Policy by a six to one vote, with one abstention. This lawsuit was mentioned by members of the public at the meeting of the Board. Indeed, one commenter played excerpts from the publicly available audio recording of the oral argument in this court.[3] The Superintendent submitted materials in support of repeal that stated that, because the virus was no longer "spreading at a rapid enough pace to overwhelm hospital systems," LAUSD "no longer need[ed] a COVID-19 vaccine requirement to keep schools open for

---

[2] Plaintiffs' Motion for Judicial Notice is **GRANTED** in part and **DENIED** in part. We take judicial notice that LAUSD voted to withdraw the Policy on September 26, 2023, and that various documents were submitted, and statements made, in connection with that repeal. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001). But we do not take judicial notice of the truth of the claims made in such written or oral statements. *Id.*; *see also Owino v. Holder*, 771 F.3d 527, 534 n.4 (9th Cir. 2014) (denying request for judicial notice of article where "[t]he government does not concede that the facts [included] are beyond dispute.").

[3] LAUSD, *September 26th, 2023 – 1pm Regular Board Meeting*, YOUTUBE (Sept. 26, 2023), https://www.youtube.com/watch?v=qQf_y77unZw (25:37–28:00) (*Meeting*).

in-person learning." They explained that "[t]he science [on vaccines] has not changed" and they are still "safe and effective." And they also cautioned that LAUSD would continue to monitor COVID-19, and if "health conditions necessitate a revisiting of the COVID-19 vaccine requirement," LAUSD would reconsider the Policy.

Comments made by LAUSD officials and Board members at the meeting generally followed these statements. The one Board member who voted against the repeal, Dr. McKenna, said he was "not afraid of litigation" or the "zealousness that will come out with lawsuits" brought by employees who lost their jobs. *Meeting* (59:20 – 1:00:48). Likewise, Board President Goldberg said that she had a "foot in [the] camp with Dr. McKenna." *Id.* (1:13:12 – 1:15:12). While she acknowledged that the virus was now "endemic," she also said she did not regret imposing the mandate for "one moment, not 30 seconds, not one tiny bit." *Id.* (1:13:15–22). When the vote on the repeal was called, she voted, "Reluctantly, yes." *Id.* (1:18:23–26).

LAUSD then asked us to dismiss the appeal, claiming that the case is now moot. Plaintiffs objected, arguing that LAUSD withdrew the Policy because they feared an adverse ruling.

II

"Judgments on the pleadings are reviewed de novo." *George v. Pac.-CSC Work Furlough*, 91 F.3d 1227, 1229 (9th Cir. 1996). We review under the same standards as a motion to dismiss. *Gregg v. Haw., Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017). So we must accept the plaintiffs' alleged facts as true, whether "actual proof" of them is "improbable." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). If the parties provide competing but

plausible explanations, the plaintiffs' complaint survives. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Thus, we can affirm for the moving party only if there are no material and unresolved facts, and the plaintiffs' claims fail as a matter of law. *George*, 91 F.3d at 1229.

### III

We begin by analyzing whether this appeal is now moot because of LAUSD's recent policy reversal. Because LAUSD acted after this litigation was filed, we must decide whether the voluntary cessation exception to mootness applies. *See, e.g.*, *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 457 n.1 (2017).

"[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). But generally, a party's decision to stop the challenged conduct does not take away our "power to hear and determine the case." *Id.* (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953)).

Sometimes, however, voluntary cessation can moot a case. First, it must be reasonably clear that the challenged practice will not happen again. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). Second, any effects of the alleged violation must be permanently reversed. *Davis*, 440 U.S. at 631. This is a "formidable burden" and "holds for governmental defendants no less than for private ones." *Fikre*, 601 U.S. at 241.

LAUSD's pattern of withdrawing and then reinstating its vaccination policies is enough to keep this case alive. *See*

*Fikre v. FBI*, 904 F.3d 1033, 1039 (9th Cir. 2018) ("[A] claim is not moot if the government remains practically and legally free to return to [its] old ways despite abandoning them in the ongoing litigation." (citing *W.T. Grant*, 345 U.S. at 632) (internal quotation marks omitted)). Twice LAUSD has withdrawn its policy only after facing some litigation risk. LAUSD immediately rescinded its prior policy after some plaintiffs first sued, and LAUSD then asked the district court to dismiss for mootness or ripeness. But then just two weeks after securing a dismissal on those grounds, LAUSD implemented the Policy, which has remained in effect for over two years.

We held oral argument on the morning of September 14, 2023, where LAUSD's counsel was vigorously questioned. That same day LAUSD submitted a report recommending rescission of the Policy. Twelve days later, LAUSD withdrew the Policy.

Litigants who have already demonstrated their willingness to tactically manipulate the federal courts in this way should *not* be given any benefit of the doubt. LAUSD's about-face occurred only after vigorous questioning at argument in this court, which suggests that it was motivated, at least in part, by litigation tactics. *See R.W. v. Columbia Basin Coll.*, 77 F.4th 1214, 1226 (9th Cir. 2023). For example, in *Columbia Basin College*, we upheld a finding that the voluntary-cessation-mootness burden had not been met. *Id.* We were persuaded by the district court, which noted the defendants' strategic timing of sending a letter purporting to moot the case more than three years after litigation but only one month before moving on mootness. *Id.* Here too, LAUSD's timing is suspect.

Rather than hold LAUSD to its "formidable burden," *see Fikre*, 601 U.S. at 241, the dissent consistently draws highly debatable inferences for LAUSD in evaluating LAUSD's actions in the two vaccine-related lawsuits filed against it. But federal judges "are 'not required to exhibit a naiveté from which ordinary citizens are free.'" *Dep't of Com. v. New York*, 588 U.S. 752, 139 S. Ct. 2551, 2575 (2019) (citation omitted). Given the detailed procedural history summarized earlier, the record at least supports a strong inference that LAUSD waited to see how the oral argument in this court proceeded before determining whether to maintain the Policy or to go forward with a pre-prepared repeal option. LAUSD appears to have twice sought to manipulate the federal courts to avoid an adverse ruling on this issue. Moreover, the Board expressly reserved the option to again consider imposing a vaccine mandate. This confirms that LAUSD has not carried its heavy burden to show that there is no reasonable possibility that it will again revert to imposing a similar policy.

We must view any strategic moves designed to keep us from reviewing challenged conduct with a "critical eye." *See Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012). Comments made by Board members confirm that its policy rescission aimed to avoid litigation. For example, Dr. McKenna—the sole Board member to vote against withdrawal of the Policy—justified his vote because he was "not afraid of litigation" or the "zealousness that will come out with lawsuits" brought by employees who lost their jobs. Likewise, Board President Goldberg said that she had a "foot in [the] camp" with Dr. McKenna, and so "reluctantly" voted to rescind. These comments show that the Board was aware of, and responding to, the pending

litigation.    LAUSD therefore is no longer entitled to any
presumption of regularity.

The dissent disagrees, citing distinguishable cases
involving challenges to COVID-19 policies.  We found in
each case that the government entity did not intentionally
abandon its policy because of litigation risk but for other
intervening reasons.  *See, e.g.*, *Brach v. Newsom*, 38 F.4th 6,
12 (9th Cir. 2022) ("The State did not rescind its school
closure orders in response to the litigation—the orders
'expired by their own terms' . . ."); *McDonald v. Lawson*, 94
F.4th 864, 869 (9th Cir. 2024) ("[N]othing in the record . . .
indicates that [the State's assertion that it would not enforce
the challenged rule] was made in bad faith." (citation
omitted)); *Seaplane Adventures, LLC v. County of Marin*, 71
F.4th 724, 732 (9th Cir. 2023) (given that California's state
of emergency ended, "there is no indication that the County
can or will reimpose restrictions similar to those in effect at
the very beginning of the pandemic."); *Donovan v. Vance*,
70 F.4th 1167, 1172 (9th Cir. 2023) (explaining that because
the vaccine mandate exemption was based on executive
orders that no longer exist, no relief is available).  Indeed,
this panel unanimously reached the same conclusion about
the withdrawal of the vaccine mandates imposed by Oregon
and Washington.  *See Johnson v. Kotek*, 2024 WL 747022,
at *1 (9th Cir. 2024) (dismissing the claims for prospective
relief as moot); *Pilz v. Inslee*, 2023 WL 8866565, at *1 (9th
Cir. 2023) (same).  As explained above, LAUSD's actions
do not suggest the same intent as existed in these other cases.
Here, unlike in *Lawson*, the evidence shows that LAUSD
acted at least partially in bad faith to avoid litigation risk in
again changing the Policy.    And unlike in *Seaplane
Adventures*, LAUSD has shown that they "can or will
reimpose" similar restrictions.

Thus, the voluntary cessation exception to mootness applies. *See id.*; *see also Pub. Utils. Comm'n of State of Cal. v. FERC*, 100 F.3d 1451, 1460 (9th Cir. 1996) ("in order for [the voluntary cessation] exception to apply, the defendant's [changed action] must have arisen *because of* the litigation." (emphasis in original)).  This case is not moot.**4**

IV

We now turn to the merits.  The district court held, applying rational basis review under *Jacobson*, that the Policy satisfied a legitimate government purpose.  But the district court's analysis diverges from *Jacobson*.  We thus vacate the district court's opinion and remand.

The district court relied on *Jacobson* to hold that the Policy was rooted in a legitimate government interest. *Reilly*, 2022 WL 5442479, at \*5–6.  But *Jacobson* does not directly control based on Plaintiffs' allegations.  In *Jacobson*, the Supreme Court balanced an individual's liberty interest in declining an unwanted smallpox vaccine against the State's interest in preventing disease.  197 U.S. at 38.  The Court explained that the "principle of vaccination" is "to prevent the spread of smallpox." *Id.* at 31–32.  Because of this, the Court concluded that the State's interest superseded Jacobson's liberty interest, and the vaccine requirement was constitutional. *Id.*

Plaintiffs argue that a "traditional vaccine" must provide immunity and prevent transmission, meaning that it must "prevent the spread" of COVID-19.  Plaintiffs allege that the vaccine does not effectively prevent spread, but only mitigates symptoms for the recipient.  And Plaintiffs claim that something that only does the latter, but not the former,

---

4 For these reasons, LAUSD's Motion to Dismiss is **DENIED**.

is like a medical treatment, not a "traditional" vaccine. This interpretation distinguishes *Jacobson*, thus presenting a different government interest.

Putting that aside, the district court held that, even if it is true that the vaccine does not "prevent the spread," *Jacobson* still dictates that the vaccine mandate challenged here is subject to, and survives, the rational basis test. The district court reasoned that "*Jacobson* does not require that a vaccine have the specific purpose of *preventing* disease." *Reilly*, 2022 WL 5442479, at *5 (emphasis in original). It acknowledged Plaintiffs' allegations that the vaccine did not "prevent transmission or contraction of COVID-19." *Id.* at *6. But it declared that "these features of the vaccine further the purpose of protecting LAUSD students and employees from COVID-19," and thus "the Policy survives rational basis review." *Id.*

This misapplies *Jacobson*. *Jacobson* held that mandatory vaccinations were rationally related to "preventing the spread" of smallpox. 197 U.S. at 30; *see also Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 23 (2020) (Gorsuch, J., concurring) ("Although *Jacobson* pre-dated the modern tiers of scrutiny, this Court essentially applied rational basis review to Henning Jacobson's challenge . . ."). *Jacobson*, however, did not involve a claim in which the compelled vaccine was "designed to reduce symptoms in the infected vaccine recipient rather than to prevent transmission and infection." *Reilly*, 2022 WL 5442479, at *5. The district court thus erred in holding that *Jacobson* extends beyond its public health rationale—government's power to mandate prophylactic measures aimed at preventing the recipient from spreading disease to others—to also govern "forced medical treatment" for the recipient's benefit. *Id.* at *5.

At this stage, we must accept Plaintiffs' allegations that the vaccine does not prevent the spread of COVID-19 as true. *Twombly*, 550 U.S. at 556. And, because of this, *Jacobson* does not apply. LAUSD cannot get around this standard by stating that Plaintiffs' allegations are wrong. Nor can LAUSD do so by providing facts that do not contradict Plaintiffs' allegations. It is true that we "need not [] accept as true allegations that contradict matters properly subject to judicial notice." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). But even if the materials offered by LAUSD are subject to judicial notice, they do not support rejecting Plaintiffs' allegations. LAUSD only provides a CDC publication that says "COVID-19 vaccines are safe and effective." But "safe and effective" for what? LAUSD implies that it is for preventing transmission of COVID-19 but does not adduce judicially noticeable facts that prove this.

We note the preliminary nature of our holding. We do not prejudge whether, on a more developed factual record, Plaintiffs' allegations will prove true. But "[w]hether an action 'can be dismissed on the pleadings depends on what the pleadings say.'" *Marshall Naify Revocable Tr. v. United States*, 672 F.3d 620, 625 (9th Cir. 2012) (quoting *Weisbuch v. County of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997)). Because we thus must accept them as true, Plaintiffs have plausibly alleged that the COVID-19 vaccine does not effectively "prevent the spread" of COVID-19. Thus, *Jacobson* does not apply, and so we vacate the district court's order of dismissal and remand.

V

This case is not moot. And the district court wrongly applied *Jacobson* to the substantive due process claim. Thus, we vacate the district court's order and remand.

**VACATED AND REMANDED.**

---

R. NELSON, J., concurring:

I write separately to address another issue not at issue in this appeal, but perhaps relevant as this case progresses on remand. Our intervening case, *Kohn v. State Bar of California*, 87 F.4th 1021 (9th Cir. 2023) (en banc), raises the question whether the district court's holding below that the Los Angeles Unified School District (LAUSD) is entitled to sovereign immunity should be revisited.

"[A] federal court generally may not hear a suit brought by any person against a nonconsenting State." *Munoz v. Super. Ct. of L.A. Cnty.*, 91 F.4th 977, 980 (9th Cir. 2024) (internal quotation marks omitted). "This prohibition applies when the state or the arm of a state is a defendant." *Id.* (cleaned up). We recently clarified when a government agency is an "arm of the state." *See Kohn*, 87 F.4th at 1026–32. We examined the current test—the *Mitchell* factors—against Supreme Court precedent and overruled it. *Id.* at 1027–30 (reassessing *Mitchell v. L.A. Cmty. Coll. Dist.*, 861 F.2d 198, 201–02 (9th Cir. 1988)). We instead adopted a new, entity-based test. *Id.* at 1030. *Kohn*'s reasoning may impact claims that can be brought against LAUSD.

The Supreme Court has never established a standard test for determining whether an entity is an "arm of the state."

*See id.* at 1026–27. We developed the *Mitchell* factors out of a "grab bag" of Supreme Court and Ninth Circuit precedent. *Id.* at 1027. One of the cases the *Mitchell* factors relied on was the Supreme Court's decision in *Edelman v. Jordan*, 415 U.S. 651 (1974). *Id. Edelman* suggested that if the judgment would be paid by the State, the suit is barred. *See id.* at 1027 (citing *Edelman*, 415 U.S. at 663 ("Thus the rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment.")). Since *Edelman*, however, the Court has held that solvency *and* state dignity are equally important, and what matters is how the state and defendant relate to one another. *See id.* at 1027–28; *see also id.* ("But, since *Edelman* and *Mitchell*, the Supreme Court has clarified that '[t]he Eleventh Amendment does not exist solely in order to preven[t] federal-court judgments that must be paid out of a [s]tate's treasury.'" (quotations omitted) (itself quoting *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 58 (1996)).

The *Mitchell* test was applied inconsistently, and thus was not predictable. The factors were weighted differently, and while this balancing afforded judicial discretion, "it allows lower courts in our Circuit to 'twist' the arms of the state doctrine depending on the defendant." *Id.* at 1029. For example, "[u]nder *Mitchell*, we [] placed the greatest weight on" who was financially responsible in assessing sovereign immunity. *Id.* at 1027 (citing *Durning v. Citibank, N.A.*, 950 F.2d 1419, 1424 (9th Cir. 1991)). This made little sense. *See id.* at 1027–30.

The second *Mitchell* factor—"whether the entity performs central government functions"—was also applied inconsistently. *Id.* at 1029. At times, we have evaluated this at the entity-level, and other times at the activity-level. *Id.*

But if the *Mitchell* test were entity-based, an entity either should be immune or not—it should not depend on what the entity is doing. *Id.*

Recognizing this tension, *Kohn* overruled *Mitchell*. *Id.* at 1028 ("The *Mitchell* factors are . . . inconsistent with Supreme Court arm of the state doctrine."). In its place, we adopted an "entity-based" test. *Id.* at 1030. This three-factor test evaluates "(1) the state's intent as to the status, including the functions performed by the entity; (2) the state's control over the entity; and (3) the entity's overall effects on the state treasury." *Id.* (citing *P.R. Ports Auth. v. Fed. Mar. Comm'n*, 531 F.3d 868, 873 (D.C. Cir. 2008) (cleaned up)). Under it, "an entity either is or is not an arm of the [s]tate"—it is not context specific. *Id.* at 1031 (citing *P.R. Ports Auth.*, 531 F.3d at 873).

We have held that California school districts have sovereign immunity, relying on *Mitchell*. *See, e.g.*, *Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 254 (9th Cir. 1992); *Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 934 (9th Cir. 2017). That said, we have held that school districts in other states are not.[1] The reasons for this differing result are now suspect under *Kohn*. Given this, it must be reassessed whether California school districts are an "arm of the state."

We first held that California school districts were an "arm of the state" in *Belanger*. We noted that some factors cut against this but reasoned that "Belanger [could not] prevail on the first and most important factor because a

---

[1] *See, e.g.*, *Holz v. Nenana City Pub. Sch. Dist.*, 347 F.3d 1176, 1184 (9th Cir. 2003) (Alaska); *Savage v. Glendale Union High Sch., Dist. No. 205*, 343 F.3d 1036, 1044 (9th Cir. 2003) (Arizona); *Eason v. Clark Cnty. Sch. Dist.*, 303 F.3d 1137, 1143 (9th Cir. 2002) (Nevada).

judgment against the school district would be satisfied out of state funds." *Belanger*, 963 F.2d at 251. We also stated that "under California law, the school district is a state agency that performs central government functions." *Id.* This analysis thus hinged on the first and second, now defunct, *Mitchell* factors. *See id. Belanger*'s analysis of the second factor also examined the *activity* that California school districts performed—public schooling—and reasoned that because that was a "central governmental function," they were "arms of the state." *Id.* The *Belanger* court was unconcerned that California school districts "enjoy wide discretion and considerable autonomy" under this second factor. *See id.* This analysis is thus suspect under *Kohn*.

We then doubled down on this holding in *Sato*. Between *Belanger* and *Sato*, California enacted AB 97, which "reformed education funding and governance in California." *Sato*, 861 F.3d at 929. As a result, public education in California became more locally funded and educational achievement more locally controlled—thus reducing the State's involvement in both. *See id.* That said, we still held that because state and local education funds were "still 'hopelessly intertwined,'" the first, now disfavored, *Mitchell* factor still favored immunity. *Id.* at 932. For the second *Mitchell* factor, while we recognized that "AB 97 granted districts [] some measure of autonomy and discretion in goal-setting," "it did not delegate primary responsibility for providing public education." *Id.* at 933. This determination thus looked at the activity—providing public education—rather than the entity. That reasoning and this conclusion is now suspect under *Kohn*.

Our new entity-based test in *Kohn* seems to conflict with (and likely overrule) our reasoning in *Belanger* and *Sato*. Because of this, the district court's holding that LAUSD is

an "arm of the state" (as well as our prior holdings in *Belanger* and *Sato*) may need to be revisited. *Cf. Reilly*, 2022 WL 5442479, at \*3 (relying on *Mitchell* to determine that LAUSD has Eleventh Amendment immunity).**²**

---

COLLINS, Circuit Judge, concurring:

I agree that this case is not moot and that *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), is not controlling under the well-pleaded allegations of Plaintiffs' complaint.    I therefore concur in the majority opinion.   I write separately to emphasize a crucial point the district court overlooked.

The district court in this case explicitly held that *Jacobson* governs Plaintiffs' substantive due process claim even if one assumes the truthfulness of the complaint's allegations that the Covid vaccines are not very effective at preventing infection and transmission and that their value is primarily in *reducing disease severity* for those recipients of the vaccine who thereafter contract Covid. As the majority explains, *Jacobson* did not involve a comparable claim and is not controlling authority with respect to it.

In my view, the district court further erred by failing to realize that these allegations directly implicate a distinct and more recent line of Supreme Court authority, in which the

---

² If LAUSD does not have sovereign immunity, Plaintiffs may be able to amend to raise a monetary claim, which would be another reason this case is not moot. *Cf. Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Jacobs v. Clark Cnty. Sch. Dist.*, 526 F.3d 419, 425–26 (9th Cir. 2008) ("[A] 'live claim for [even] nominal damages will prevent dismissal for mootness.'" (quoting *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 872 (9th Cir. 2002))).

Court has stated that "[t]he principle that a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment may be inferred from [the Court's] prior decisions." *Cruzan ex rel. Cruzan v. Director, Mo. Dep't of Health*, 497 U.S. 261, 278–79 (1990) (citing, not only *Jacobson*, but a series of later "cases support[ing] the recognition of a general liberty interest in refusing medical treatment"). In *Washington v. Glucksberg*, 521 U.S. 702 (1997), the Court explained that *Cruzan*'s posited "'right of a competent individual to refuse medical treatment'" was "entirely consistent with this Nation's history and constitutional traditions," in light of "the common-law rule that forced medication was a battery, and the long legal tradition protecting the decision to refuse unwanted medical treatment." *Id*. at 724–25 (citation omitted). Given these statements in *Glucksberg*, the right described there satisfies the history-based standards that the Court applies for recognizing "fundamental rights that are not mentioned anywhere in the Constitution." *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 237–38 (2022). The Supreme Court's caselaw thus clarifies that compulsory treatment for the health benefit of *the person treated*—as opposed to compulsory treatment for the health benefit of *others*—implicates the fundamental right to refuse medical treatment.

Plaintiffs' allegations here are sufficient to invoke that fundamental right. Defendants note that the vaccination mandate was imposed merely as a "condition of employment," but that does not suffice to justify the district court's application of rational-basis scrutiny. *See Lane v. Franks*, 573 U.S. 228, 236 (2014) ("[The] Court has cautioned time and again that public employers may not condition employment on the relinquishment of constitutional rights.").

With these additional observations, I concur in the majority opinion.

---

HAWKINS, Circuit Judge, dissenting.

This case is over. We cannot grant the sole relief sought by the Plaintiffs, an injunction against enforcement of the school district's now rescinded COVID-19 vaccination policy (the "Policy"). Despite the absence of any ongoing policy, my friends in the Majority would hold that this action remains justiciable under the voluntary cessation exception to mootness. *See FBI v. Fikre*, 601 U.S. 234, 241 (2024). In doing so, they ignore the practical realities surrounding LAUSD's adoption and rescission of the Policy, which demonstrate that there is no reasonable expectation LAUSD will reimpose the Policy in the future. Because there is no longer any policy for our court to enjoin, I would, as our court has done consistently in actions challenging rescinded early pandemic policies, hold that this action is moot, vacate the district court's decision, and remand with instructions to dismiss the action without prejudice. *See, e.g.*, *Brach v. Newsom*, 38 F.4th 6 (9th Cir. 2022) (en banc).

I begin with a brief overview of the pertinent events to illustrate the context in which LAUSD adopted and then rescinded the Policy. In early March 2020, the World Health Organization declared a global pandemic in response to COVID-19, leading to the issuance of local, state, and federal emergency declarations and orders. "Governor Gavin Newsom declared a state of emergency within California, and issued Executive Order N-33-20, requiring Californians to 'heed the current State public health directives' including the requirement 'to stay home or at their

place of residence.'" *Id.* at 9. Around March 16, 2020, LAUSD closed its facilities for in-person operations and implemented a distance learning and remote work program that lasted through most of the 2020–2021 school year.

In advance of the reopening of schools for in-person instruction, California Educators for Medical Freedom—one of the Plaintiffs in this action—and several other individuals filed a complaint on March 17, 2021, seeking to enjoin LAUSD from implementing a policy that required employees, without exception, to be vaccinated against COVID-19. *Cal. Educators for Med. Freedom v. Los Angeles Unified Sch. Dist.*, No. 21-cv-02388, 2021 WL 1034618, Dkt. 1 (C.D. Cal. Mar. 17, 2021) (*CEMF*).[1] The *CEMF* complaint alleged, on information and belief, that LAUSD had adopted such a policy, *id.* ¶ 1, and attached several documents in support, including a March 4, 2021 memorandum to employees. *See id.* Ex. F. The memorandum informed LAUSD employees that they were eligible to receive COVID-19 vaccinations and provided information about registering for vaccinations through the District's vaccination program or submitting documentation of their vaccination if received through an outside program. *Id.* The memorandum did not state explicitly that employees were required to receive vaccinations or that employment consequences would follow if employees were not vaccinated.[2] *Id.* The day after the *CEMF* plaintiffs filed

---

[1] We may take judicial notice of filings and decisions in related court actions. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

[2] CEMF also supported its complaint with a letter from the LAUSD employees' union. *CEMF*, No. 21-cv-02388, 2021 WL 1034618, Dkt.

their complaint, LAUSD sent an updated interoffice memorandum that clarified "vaccinations are not mandatory at this time."   The *CEMF* plaintiffs acknowledged in an amended complaint that LAUSD was giving staff the option to test or be vaccinated.

LAUSD moved to dismiss the case on ripeness grounds because it had not yet implemented a vaccination policy, and the district court granted the motion.  The district court found that the case did not raise any voluntary cessation concerns because, "according to Plaintiffs' allegations, Defendants never began the objectionable conduct in the first place." The district court dismissed the action without prejudice on July 27, 2021.

The 2021–2022 LAUSD school year was set to begin just a few weeks later on August 16, 2021.[3]  The 2021–2022 school year also marked the unrestricted reopening of LAUSD schools for in-person instruction.[4]  On August 13, 2021—the first "pupil free day" of the school year[5] and three

---

1, Ex. G.  The letter indicated that the District's plans to implement a mandatory vaccination policy were in progress; the information regarding those plans "may very well change;" discussions with the District were "nowhere near done;" and no deadlines had been set given a variety of unknown variables, including the availability of vaccinations.  *Id.*

[3] LAUSD, Single-Track Instructional School Calendar 2021–2022, https://achieve.lausd.net/cms/lib/CA01000043/Centricity/Domain/4/RE V1.4.2022BoardAppvd_2021-2022InstructionalCal.pdf   ["LAUSD 2021–2022 Calendar"].

[4] The emergency legislation allowing the California public school system to move online expired on June 30, 2021, and on July 12, 2021, the State of California lifted "all restrictions on school reopening."  *Brach*, 38 F.4th at 11, 13.

[5] *See* LAUSD 2021–2022 Calendar.

days before students would be returning to the classrooms—
LAUSD circulated a memorandum to staff announcing the
Policy and explaining that all non-exempt employees must
be vaccinated against COVID-19.  The LAUSD Board of
Education (the "Board") approved the policy at a subsequent
meeting in November 2021.

Plaintiffs filed the underlying complaint and sought an
injunction barring enforcement of the Policy.  LAUSD
eventually moved for judgment on the pleadings.  The
district court granted the motion and entered judgment in
favor of the Defendants.  Plaintiffs then appealed.

We held oral argument on September 14, 2023,
approximately four weeks after the start of LAUSD's 2023–
2024 school year.[6]  At oral argument, counsel for Plaintiffs
informed the court that, although the Policy remained in
effect as of that date, there were rumors LAUSD would be
rescinding the Policy.  Consistent with those rumors, a
detailed report proposing rescission of the Policy was
submitted to the Board on the same day as oral argument.
The proposal identified the many changes that had occurred
since LAUSD adopted the Policy in the fall of 2021 and
expressed the view that vaccines were no longer needed to
keep schools open for in-person learning.  At its next
meeting, held on September 26, 2023, the Board heard
comments from interested parties and voted to rescind the
Policy.

---

[6]  LAUSD,   Instructional   School   Calendar   2023–2024,
https://www.lausd.org/site/default.aspx?PageType=3&ModuleInstanceI
D=67213&ViewID=C9E0416E-F0E7-4626-AA7B-
C14D59F72F85&RenderLoc=0&FlexDataID=112212&PageID=
17824&Comments=true.

The Majority characterizes LAUSD's conduct as an intentional manipulation of federal courts. But we generally afford the government a presumption of good faith, *Brach*, 38 F.4th at 13, and when viewed in context, there are obvious, non-litigation-related explanations for LAUSD's actions surrounding the adoption and rescission of the Policy. Far from the "about-face" described by the Majority, the *CEMF* pleadings and attached documents reflect that LAUSD simply had not formalized or implemented a vaccination policy at the time the plaintiffs filed their complaint in that litigation. Although implementation of the Policy came on the heels of the *CEMF* lawsuit's dismissal, it also coincided with the start of the new school year and LAUSD's full return to in-person learning after the unprecedented school closures seventeen months earlier. Thus, I would not be so quick to deem the timing of LAUSD's development and adoption of the Policy as litigation gamesmanship, and I would not rely on it to infer the motive behind LAUSD's rescission of the Policy. Instead, I believe there is sufficient evidence in the record that LAUSD rescinded the Policy in response to developments regarding COVID-19 and "not [as] a temporary move to sidestep litigation." *Brach*, 38 F.3d at 13.

Next, and more importantly, the record shows that LAUSD is not reasonably expected to reenact the Policy. *See Fikre*, 601 U.S. at 241. The burden to show that challenged conduct is not reasonably expected to recur is a "formidable" one indeed. *Id.* And governmental defendants must bear that burden just as any other private party would. *Id.* Here, LAUSD has carried that burden.

Again, context matters. LAUSD adopted the Policy in response to the COVID-19 pandemic and the return to full in-person instruction after the extended school closures

occasioned by the onset of the pandemic. Those are not "routine occurrence[s] that we can assume [are] reasonably likely to reoccur." *McDonald v. Lawson*, 94 F.4th 864, 869 (9th Cir. 2024). It then rescinded the Policy after several key developments in 2023, including the end of local, state, and federal emergency COVID-19 orders; the World Health Organization's determination that COVID-19 no longer constitutes a public health emergency of international concerns; and the determination that COVID-19 had entered an endemic phase. These legal and scientific developments and LAUSD's reliance on them suggest that LAUSD's recission of the Policy is "entrenched" and not "easily abandoned." *Brach*, 38 F.4th at 13. LAUSD also has averred that, absent a very unlikely return to the onset of the COVID-19 pandemic, it will not reinstate the Policy.

As we have said before, "circumstances change, and when circumstances change, it is not reasonable to expect simple repetition of past actions." *Wallingford v. Bonta*, 82 F.4th 797, 804 (9th Cir. 2023). The bottom line, here, is that the circumstances have changed. And neither the speculative possibility of a future pandemic nor LAUSD's power to adopt another vaccination policy save this case.[7] *See Brach*, 38 F.4th at 9.

---

[7] I also disagree with the approach to avoiding mootness suggested in the concurrence. Although we may consider subsequent events when evaluating mootness, we typically do not allow plaintiffs to change the nature of the remedies sought in their complaint when mootness concerns arise. *Seven Words LLC v. Network Solutions*, 260 F.3d 1089, 1097–98 (9th Cir. 2001). If our court would not allow the Plaintiffs to save this case with a "late-in-the-day" request for damages, *Bain v. Cal. Teachers Ass'n*, 891 F.3d 1206, 1212 (9th Cir. 2018), the court certainly should refrain from sua sponte suggesting a novel legal theory in support

Unsurprisingly, our court has found that other challenges to early COVID-19 policies became moot upon the rescission or expiration of those policies, and in doing so, we rejected arguments that the voluntary cessation exception to mootness applied, particularly in light of the unique circumstances that gave rise to the policies in the first place. *See, e.g.*, *id.* at 12–14; *McDonald*, 94 F.4th at 869; *Seaplane Adventures, LLC v. County of Marin*, 71 F.4th 724, 732–33 (9th Cir. 2023); *Donovan v. Vance*, 70 F.4th 1167, 1172 & n.5 (9th Cir. 2023).

In a recent trio of cases, the Supreme Court vacated as moot lower court judgments concerning COVID-19 vaccination mandates following the rescission of those mandates. *Payne v. Biden*, 144 S. Ct. 480 (2023); *Biden v. Feds for Ded. Freedom*, 144 S. Ct. 480, 480–81 (2023); *Kendall v. Doster*, 144 S. Ct. 481 (2023). Relying on *Payne*, *Feds for Medical Freedom*, and *Doster*, we determined that a challenge to the executive order mandating COVID-19 vaccinations for federal contractors became moot upon rescission of that executive order; we vacated our court's earlier opinion, dismissed the appeal as moot, and remanded for the district court to vacate portions of its order regarding the moot claims. *Mayes v. Biden*, 89 F.4th 1186, 1188 (9th Cir. 2023). The case before us now warrants the same result.

"Sometimes, events in the world overtake those in the courtroom, and a complaining party manages to secure outside of litigation all the relief he might have won in it." *Fikre*, 601 U.S. at 240. That is the case here. Because there is no longer any policy for the court to enjoin or declare unlawful, I would hold that the case is moot, vacate the

---

of a remedy not sought in the complaint as a means to reach the merits of an otherwise moot case.

district court's decision, and remand for the district court to dismiss the case as moot. *See United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950).  I dissent.